UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal No. 3:19-cr-105 (AWT) |
| | : | |
| v. | : | |
| | : | |
| JOEL C. RILEY | : | January 17, 2020 |

## UNITED STATES'S SENTENCING MEMORANDUM

The Government respectfully submits this memorandum in response to the sentencing memorandum of the defendant, Joel C. Riley. From approximately April 2015 to July 2016, Mr. Riley engaged in a scheme to defraud several financial institutions by fraudulently obtaining loans and lines of credit in the name of his then-wife, without her authorization, causing a loss to the financial institutions of over $200,000. As part of the scheme, he then sought to fraudulently discharge the debt in bankruptcy court so he would not have to pay it back. He recruited a prostitute to impersonate his wife and caused a bankruptcy attorney to file a false bankruptcy petition in the wife's name in United States Bankruptcy Court without the wife's knowledge or permission. Mr. Riley's actions defrauded the financial institutions, the bankruptcy attorney, and the bankruptcy court. His actions also defrauded his wife, ruined her credit history, and wrecked havoc on her life.

This was not the first time Mr. Riley engaged in such fraudulent behavior. For more than a decade, in at least nineteen separate instances, Mr. Riley obtained and/or attempted to obtain loans from financial institutions using the identities of family members without their knowledge or permission, causing losses to financial institutions and ruining the credit history of his family members. In short, Mr. Riley is a serial fraudster who engages in identity theft for his own personal gain without regard to the consequences to others. In light of the above, the Government respectfully requests that the Court impose a Guidelines sentence of imprisonment between 24 to 30 months, followed by the maximum term of supervised release.

**I.      FACTUAL BACKGROUND**

The Government agrees with the offense conduct set forth in the Pre-Sentence Report ("PSR"). PSR ¶¶ 5-39. In short, from approximately April 2015 to July 2016, Mr. Riley engaged in a scheme to defraud several financial institutions of money. *Id.* He fraudulently applied for and obtained loans in the name of his then-wife ("Individual-A"), without her knowledge or permission. PSR ¶¶ 6-7. By December 2016, the outstanding debt on those loans was approximately $211,142, and Mr. Riley did not have the intent or the ability to repay the debt. PSR ¶¶ 7-8. Later that month, as part of the scheme, Mr. Riley visited a bankruptcy attorney and sought to file a federal bankruptcy petition in his wife's name in order to fraudulently discharge the debt. PSR ¶¶ 9-11. Mr. Riley presented the attorney with a forged "Durable Power of Attorney" document that appointed Mr. Riley as agent and attorney-in-fact for his wife. PSR ¶¶ 11. The document was purportedly signed by his wife. *Id.* However, as law enforcement later learned, the document was a forgery. His wife never signed the power of attorney, and the signature on the document was not hers. *Id.*

Over the next few months, Mr. Riley continued his scheme to fraudulently discharge the outstanding debt. PSR ¶¶ 12-21. Using a fake email address in his wife's name, Mr. Riley impersonated his wife in communications with the bankruptcy attorney in order to create the illusion that his wife was fully aware of the bankruptcy filing. PSR ¶¶ 15-16. Eventually, when the time came to sign the bankruptcy petition in June 2017, Mr. Riley recruited a prostitute to impersonate his wife. PSR ¶¶ 18-21. Mr. Riley took his wife's driver's license, without permission, and gave it to the prostitute to use as identification. PSR ¶ 19. On June 6, 2017, Mr. Riley and the prostitute visited the bankruptcy attorney, where she presented the driver's license as identification. *Id.* Mr. Riley then had the prostitute sign the bankruptcy petition in his wife's name,

which the attorney then filed in United States Bankruptcy Court for the District of Connecticut (the "Bankruptcy Court") in order to fraudulently discharge the debt that Mr. Riley had illicitly obtained in his wife's name. PSR ¶¶ 20-21.

## II. PROCEDURAL HISTORY AND SENTENCING GUIDELINES

On May 7, 2018, Mr. Riley was arrested on a criminal complaint charging him with bankruptcy fraud and identity theft. *See* ECF Nos. 1, 12. On April 17, 2019, Mr. Riley waived indictment and entered a plea of guilty to a one-count Information charging him with bankruptcy fraud, in violation of 18 U.S.C. § 157. PSR ¶ 1. He faces a maximum penalty of five years of imprisonment, three years of supervised release, a fine of up to $250,000, and a $100 mandatory special assessment. PSR ¶¶ 94, 97, 101-102. He must also pay restitution to the victims of his offense. PSR ¶¶ 40, 105.

As part of his plea agreement, Mr. Riley agreed to the additional Special Conditions of Supervised Release outlined in the rider to the plea agreement, which are consistent with the recommended conditions in the PSR. *See* Plea Agreement at 2, 12-13; PSR ¶ 113. He also agreed to pay restitution to the victim financial institutions that suffered losses from his conduct in the total amount of $211,142. *See* Plea Agreement at 3; PSR ¶¶ 3, 40.

The PSR calculated Mr. Riley's offense level under the Federal Sentencing Guidelines as follows. The PSR determined the base offense level under U.S.S.G. §§ 2X5.1 and 2B1.1(a)(2) to be six. PSR ¶ 44. Ten levels were added pursuant to U.S.S.G. § 2B1.1(b)(1)(F) to reflect losses between $150,000 and $250,000. PSR ¶ 45. Two levels were added pursuant to U.S.S.G. § 2B1.1(b)(9)(B) because the offense involved a misrepresentation during the course of a bankruptcy proceeding. PSR ¶ 46. Two more levels were added pursuant to U.S.S.G. § 2B1.1(b)(11)(C)(i) because the offense involved the use of Individual-A's means of identification, specifically her

name and personal information, without her authorization to obtain bank loans in her name. PSR ¶ 47. Three levels are subtracted under U.S.S.G. § 3E1.1 for acceptance of responsibility,[1] resulting in a total offense level of 17. PSR ¶¶ 53-55.

The PSR determined that Mr. Riley has no criminal history, which places him in Criminal History Category I. PSR ¶¶ 57-62. As a result, the PSR concluded that Mr. Riley faces a Guidelines range of 24 to 30 months of imprisonment, a term of supervised release of one to three years, and a fine of $10,000 to $95,000. PSR ¶¶ 95, 98, 103. Although Mr. Riley is statutorily eligible for probation, he is ineligible for probation under the Sentencing Guidelines because the applicable Guidelines range is in Zone D of the Sentencing Table. PSR ¶ 100 (citing U.S.S.G. § 5B1.1).

The Government agrees with the Guidelines calculation in the PSR, which is the same calculation that the parties agreed to in the Plea Agreement. The Government also has no objections to the PSR.

## IV.    DISCUSSION OF SENTENCING AND 3553(a) FACTORS

The Government respectfully requests that the Court impose a Guidelines sentence of imprisonment, followed by a three-year term of supervised release. Such a sentence would reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense, while also affording adequate specific and general deterrence to future criminal conduct.

In this case, Mr. Riley's offense was a serious one. He participated in a scheme that defrauded several financial institutions out of approximately $211,000. In order to carry out his scheme, he stole his then-wife's identity and obtained loans in her name, without her knowledge

---

[1] At sentencing, because Mr. Riley has assisted authorities by timely notifying the Government of his intention to plead guilty, the Government intends to make a motion that the Court award the third point for acceptance of responsibility under U.S.S.G. § 3E1.1(b).

or permission. He then lied to a bankruptcy attorney and recruited another woman to impersonate his wife in order to fraudulently discharge the debt.

This type of fraud—which is part of the category of fraud referred to in the banking industry as "new account fraud"—is a widespread and fast-growing problem, and is increasing at an alarming rate. *See* Ex. A (article from American Banker website); Ex. B (article from Bankrate.com website). According to websites covering the banking industry, new account fraud rose from just under $3 billion in 2015 to $3.4 billion in 2018, with loan fraud more than doubling from 2017 to 2018. *See* Ex. A; Ex. B. The losses from such schemes is likely passed on to consumers in the form of increased banking fees and costs. Mr. Riley's conduct in this case added to this serious and rampant problem.

Not only did Mr. Riley's scheme defraud several financial institutions out of money, he also committed a fraud on the United States Bankruptcy Court. Such blatant dishonesty jeopardizes the integrity of the bankruptcy process. *See United States v. Hale*, 762 F.3d 1214, 1222 (10th Cir. 2014) ("The success of our bankruptcy laws requires a debtor's full and honest disclosure." (quoting *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282, 1288 (11th Cir. 2002)); *Payne v. Wood*, 775 F.2d 202, 205 (7th Cir.1985) ("The operation of the bankruptcy system depends on honest reporting."); *In re Mascolo*, 505 F.2d 274, 278 (1st Cir. 1974) ("The successful functioning of the bankruptcy act hinges both upon the bankrupt's veracity and his willingness to make a full disclosure."). As one Court of Appeals has observed, "[t]he implicit bargain for discharge is simple: candid, good faith disclosure of the debtor's financial affairs in return for the freedom of a clean slate." *Robinson v. Worley*, 849 F.3d 577, 583 (4th Cir. 2017) (citation omitted). "The goal is to spare trustees and creditors from having to undertake time-consuming investigations" into the debtor's financial affairs. *Id.*

Deceiving the Bankruptcy Court, as Mr. Riley did here, strikes at the very core of what makes filing for bankruptcy such an easy process for those who are in legitimate need of a discharge: reliance on a filer's honesty. *See Marrama v. Citizens Bank of Massachusetts*, 549 U.S. 365, 367 (2007) ("the principal purpose of the Bankruptcy Code is to grant a fresh start to the honest but unfortunate debtor." (internal quotation and citation omitted)); *In re Lowery*, 398 B.R. 512, 515 (Bankr. E.D.N.Y. 2008) ("Full and honest disclosure in a bankruptcy case is crucial to the effective functioning of the bankruptcy system. Because the bankruptcy court, trustees, and creditors rely on the information disclosed by a debtor, the importance of full disclosure cannot be overemphasized." (citations omitted)).

Finally, and perhaps most significantly, fraudulent schemes based on identity theft, such as Mr. Riley's scheme here, have serious repercussions on the individuals whose identities are stolen and used for fraudulent purposes. As Individual-A explained in her letter to the Court, Mr. Riley's conduct "wrecked havoc in [her] life" and she had to undertake an "exponential amount of work 'cleaning up the mess.'" *See* Def.'s Sentencing Mem., Ex. B (letter from Individual-A). The loans that Mr. Riley fraudulently obtained showed up on her credit history as delinquent loans and ruined her credit. Individual-A was later sued in Connecticut Superior Court by one of the lenders to collect on the debt. PSR ¶ 25. Fortunately, through an attorney, she was able to get the case dismissed after explaining to them what Mr. Riley had done. Nevertheless, she had to undertake that effort to get the case dismissed, and in the end, even though Individual-A was not ultimately held liable, the financial institution still suffered a loss.

The false bankruptcy petition also had the potential to ruin Individual-A's credit even more. *See In re T.H.*, 529 B.R. 112, 138 (Bankr. E.D. Va. 2015) ("the filing of a bankruptcy petition can detrimentally affect a debtor's credit history and ability to obtain credit well after the filing of a

6

bankruptcy petition"); *In re Meltzer*, 516 B.R. 504, 519 (Bankr. N.D. Ill. 2014) ("a bankruptcy on a credit report can negatively affect a person's credit score, limiting his ability to obtain credit, insurance, and employment"). Individual-A fortunately discovered the fraud and had the bankruptcy case dismissed.

In addition to the seriousness of Mr. Riley's conduct, the Court should consider deterrence and the need to promote respect for the law. In this case, there is a significant need for specific deterrence. In Mr. Riley's sentencing memorandum, he argues that he is a first-time offender and that he will not re-offend. Respectfully, the Government submits that Mr. Riley is not a first-time offender. Although the instant case is the first time that Mr. Riley has been charged and convicted of an offense, this was not the first time he engaged in fraudulent conduct. As noted in the PSR, Mr. Riley has a history of using the identities of other people to fraudulently obtain or attempt to obtain loans in their names. Several years ago, he fraudulently obtained a loan in the name of another family member ("Individual-B"), and the bank had to discharge the debt and suffered a loss. PSR ¶ 38. He also obtained five lines of credit in the name of a third family member ("Individual-C"). Although he later promised to pay off those debts, he did not, and Individual-C was forced to file for bankruptcy. PSR ¶ 39. Like the impact on Individual-A, the impact on Individual-C was significant. As she writes in her letter, "she was forced into bankruptcy and it took her ears to rebuild her credit." *See* Def.'s Sentencing Mem., Ex. C (letter from Individual-C).

Since then, Mr. Riley has continued to attempt to obtain loans—approximately 13 loans (in addition to the 7 loans that are part of the instant scheme)—from financial institutions using the identities of family members without their knowledge or permission, including several additional loans in the name of Individual-A, Individual-B, and Individual-C. *See* PSR ¶¶ 26-36. Mr. Riley fabricated pay stubs to make it appear that Individual-B was employed. PSR ¶ 30. And

the Government has recently learned that in one of the loans applications for Individual-A, he created a paystub showing she was employed at the University of New Haven, when, in fact, she never worked there.

In addition to these fraudulent loans, Mr. Riley appears to have preyed on others for financial gain. After Mr. Riley's divorce from Individual-A, he began dating another woman ("Individual-D") for six months. *See* PSR ¶ 73a; Ex. C (letter to the Court from Individual-D). She is a kindergarten teacher and a single mother of three children. *Id.* In the six months they dated, he convinced her to loan him over $40,000. *Id.* Although he promised to pay her back, he never paid a dime. *Id.* In her letter to the Court, she describes the tremendous financial and emotional toll he caused her. She has been unable to pay her son's college tuition without taking out additional loans. *Id.* She describes Mr. Riley as "a narcissist" and a "true con," and she even caught him searching for his "next victim" while they were still dating. *Id.*

What makes all of his past and present conduct more troubling is that his victims include those that trust and love him the most: his family. Mr. Riley betrays their trust with utter disregard for the financial devastation his actions can, and, in fact, have caused them.

In Mr. Riley's sentencing memorandum, he claims "there is no risk of Mr. Riley re-offending." Def.'s Sentencing Mem. at 15. In light of his history, however, the Government does not share his optimism. The Government believes there is a significant need for specific deterrence.

Finally, there also is a need for general deterrence and promoting respect for the law in order to address the growing problem of consumer credit fraud and identity theft, which, as discussed, results in billions of dollars in losses each year. The Court's sentence should send a

message that financial schemes such as the one Mr. Riley perpetrated, bankruptcy fraud, and more importantly, committing a fraud upon the courts, will not be tolerated.

The Government recognizes that neither Individual-A nor Individual-C believe Mr. Riley should go to jail, even though they are victims of his past and present conduct. With respect to Individual-A, she explains the impact his incarceration will have on their children, both emotionally and financially, as they share legal custody of the children and he pays alimony and child support. However, Mr. Riley's family circumstances do not warrant special consideration in determining his sentence. Section 5H1.6 of the Sentencing Guidelines states that family ties and responsibilities and community ties are ordinarily not relevant in determining whether a sentence should be outside the applicable guideline range. Thus, it is only in the extraordinary case that a defendant's family circumstances will warrant consideration. As the Second Circuit noted in *United States v. Johnson*, 964 F.2d 124, 128 (1992), "[t]he Sentencing Commission understood that many defendants shoulder responsibilities to their families[.]" *See also United States v. Webb*, 49 F.3d 636, 638-39 (10th Cir. 1995) (defendant, who was sole caretaker of son, not deemed to have extraordinary family circumstances); *United States v. Brown*, 29 F.3d 953 (5th Cir. 1994) (single mother of two young children, who could stay with great grandmother, not deemed to have extraordinary family circumstances). "Disruption of the defendant's life, and the concomitant difficulties for those who depend on the defendant, are inherent in the punishment of incarceration." *Johnson*, 964 F.2d at 128. The disruption of parental relationships is to be expected when a parent engages in criminal activity. *See United States v. Canoy*, 38 F.3d 893, 907 (7th Cir. 1994) (citing numerous cases); *United States v. Cacho*, 951 F.2d 308, 311 (11th Cir. 1992) (noting that innumerable defendants could no doubt argue that imposition of a prison sentence would harm family relationships).

In this case, Mr. Riley's responsibilities for his children are not extraordinary or exceptional. While Individual-A relies on him for alimony and child support, she has a college education and is capable of working. The Government understands and respects Individual-A's position, but there are other victims that need to be considered, including the financial institutions that suffered a loss, and there is a need for specific and general deterrence, and the need to promote respect for the law.

In short, Mr. Riley is a financial predator who preys on those around him—betraying their love and trust—for his own financial benefit with no regard whatsoever to the devastating impact his conduct has on others. For all of these reasons, the Government does not believe a probation is warranted. A sentence of imprisonment is necessary in light of the 3553(a) factors addressed above.

Accordingly, the Government respectfully requests that the Court impose a Guidelines sentence of imprisonment followed by a three-year term of supervised release to include the strict conditions agreed upon in the plea agreement and recommended in the PSR. The Government also asks the Court to order Mr. Riley to pay restitution to the victim financial institutions in the total amount of $211,142.

## VI. <u>CONCLUSION</u>

For the reasons stated above, the Government respectfully asks the Court to impose a Guidelines sentence of imprisonment between 24 and 30 months, followed by a three-year term of supervised release, and an order of restitution for $211,142.

        Respectfully submitted,

        JOHN H. DURHAM
        UNITED STATES ATTORNEY

        */s/ Neeraj N. Patel*

        NEERAJ N. PATEL
        ASSISTANT UNITED STATES ATTORNEY
        Federal Bar No. phv04499
        157 Church Street, 25th Floor
        New Haven, CT  06510
        Tel.:   (203) 821-3700
        Email: neeraj.patel@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on January 20, 2020, a copy of the foregoing Sentencing Memorandum was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

*/s/ Neeraj N. Patel*
Neeraj N. Patel
Assistant United States Attorney